IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEREMIAH DOBYNES,<br><br>        Plaintiff,<br><br>    v.<br><br>Lt. CARLOS GALAN, Sgt. JUSTIN HOOK, Sgt. MARK WOLFE, Correctional Officer ADETUNJI ADESHINA,<br>Correctional Officer JENNA CARTER,<br>Correctional Officer JORGE CALDERON,<br>Correctional Officer WILLIAM COLLINS,<br>Correctional Officer NELSON FLORES,<br>Correctional Officer PASCAL HARRIS,<br>Correctional Officer SEVIN HUGHEY,<br>Correctional Officer JOSE GOMEZ,<br>Correctional Officer KENNETH JOPLIN,<br>Correctional Officer ENRIQUE LOPEZ,<br>Correctional Officer JEFFREY RAMOS,<br>Correctional Officer BRYAN SANCHEZ,<br>Correctional Officer CARLOS TORRES-IRIZARRY,<br>Correctional Officer KENNETH WOODS, and UNKNOWN COOK COUNTY JAIL EMPLOYEES,<br><br>        Defendants. | Case No. 20 cv 3999<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Jeffrey Cole<br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

Plaintiff Jeremiah Dobynes, by and through undersigned counsel, complains of violations of his constitutional rights by Defendants Lieutenant Carlos Galan, Sergeant Justin Hook, Sergeant Mark Wolfe, Correctional Officer Adetunji Adeshina, Correctional Officer Jenna Carter, Correctional Officer Jorge Calderon, Correctional Officer William Collins, Correctional Officer Nelson Flores, Correctional Officer Pascal Harris, Correctional Officer Sevin Hughey, Correctional Officer Jose Gomez, Correctional Officer Kenneth Joplin, Correctional Officer

Enrique Lopez, Correctional Officer Jeffrey Ramos, Correctional Officer Bryan Sanchez, Correctional Officer Carlos Torres-Irizarry, Correctional Officer Kenneth Woods, and unknown Cook County Jail employees, in their individual capacities, and respectfully states as follows:

## INTRODUCTION

1. While a pretrial detainee at the Cook County Jail, Plaintiff Jeremiah Dobynes was subjected to serious and repeated violations of his constitutional rights, physical harm, harassment, and humiliation.

2. On virtually a daily basis during his detention at the Cook County Jail, the Defendants told other inmates that Dobynes was prescribed methadone, a substitute drug in the treatment of morphine and heroin addiction.

3. The Defendants even alerted other inmates to when Dobynes was taken to a medical facility to fill his prescription.

4. The Defendants did so for no legitimate reason except to gratuitously humiliate and harm Dobynes, and they did so knowing or expecting that this otherwise private medical information would prompt other inmates to harass and bully Dobynes into sharing his prescribed methadone.

5. Dobynes promptly and repeatedly notified Cook County Jail officials in writing of these violations of his constitutional rights and the harm he was suffering as a result, but his scores of written grievances were all denied and did nothing to end the Defendants' misconduct.

6. In fact, one of the Defendants, Sgt. Mark Wolfe, explicitly threatened Dobynes with retaliation for filing grievances.

7. When Dobynes continued to file written grievances, on information and belief, Sgt. Wolfe made good on his threat by instructing other correctional officers to search Dobynes more frequently and to retaliate against him in other ways.

8. Because the Defendants violated his constitutional rights to due process and freedom of expression and caused him significant physical, emotional and mental injuries, Dobynes brings this action pursuant to 42 U.S.C. §1983 and seeks compensatory damages, punitive damages, and an award of reasonable attorneys' fees.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1983.

10. This Court has personal jurisdiction over the Defendants because this lawsuit arises out of acts and omissions committed by the Defendants at the Cook County Jail in Cook County, Illinois.

11. Venue is proper in this judicial district under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within the Northern District of Illinois.

## THE PARTIES

12. Dobynes is a citizen of the United States and was a pretrial detainee at the Cook County Jail.

13. All Defendants were employed at the Cook County Jail as correctional officers or officials.

14. All Defendants were acting under color of law when they committed the acts and omissions alleged herein. They are named as Defendants in their individual capacities.

**FACTUAL ALLEGATIONS**

15. Dobynes was a pretrial detainee at the Cook County Jail.

16. While detained at the Cook County Jail, Dobynes underwent medical treatment for heroin addiction.

17. As part of his treatment plan, Dobynes was prescribed methadone, a synthetic analgesic drug that is used as a substitute drug in the treatment of morphine and heroin addiction.

18. On a daily basis, on orders of his physician, Dobynes would be taken by correctional officers from the Cook County Jail to a medical facility, Cermak Health Services ("Cermak"), where his methadone prescription would be administered.

19. Dobynes's methadone prescription was a private medical fact. If not for the acts and omissions of the Defendants alleged herein, it would not have been publicized to other inmates at the Cook County Jail.

20. Dobynes did not inform any other inmates at the Cook County Jail that he was prescribed methadone because, as any reasonable person would understand and expect under the circumstances, such information would cause other inmates to harass, bully and coerce Dobynes into giving his prescribed methadone to them.

21. Dobynes would thereby be subjected to physical, emotional and mental harm.

22. Nevertheless, on a daily or near-daily basis over the course of months, the Defendants gratuitously advertised Dobynes's methadone prescription to the other inmates.

23. The Defendants had no legitimate reason to do this. They acted maliciously and simply out of a desire to humiliate Dobynes.

24. Once Dobynes began filing grievances based on their misconduct, the Defendants acted out of a desire to retaliate against him for filing grievances.

25. In front of and within earshot of other inmates, the Defendants publicly called Dobynes names referring to his medication, such as: "dope fiend bitches," "methadonian," "methadone dope fiend," "junky bitch," "dope head," "a methadone," "Mr. Methadone," "doper," "junky," "methadonian L-5," "meth man L-5" and "gin and juicer."

26. Additionally, the Defendants issued commands that disclosed Dobynes's addiction and treatment, such as: "Dope addicts on your doors;" "Heroin users on the walk;" "Let me get my methadone out of L-5;" "Dobynes get ready to get high on methadone;" "Time for your fix, you know who you are L-5 Dobynes;" "Time to juice up L-5, let's go;" "It's happy hour Dobynes - they are waiting for you;" "Methadonian L-5 to the dayroom;" "Those of you that are going to get high today, come now;" "If you want your dope, I want quiet;" and "Methadones get ready in 10 or 15 minutes."

27. The consequences of the Defendants' misconduct were entirely predictable.

28. Once other inmates knew that Dobynes had a prescription for methadone and received it every day at Cermak, they bullied Dobynes, harassed him physically and verbally, and coerced Dobynes into giving them the methadone.

29. To coerce Dobynes into sharing his methadone with them, other inmates slapped him, kicked him, punched him, choked him, spat on him and on his food, ambushed him in the bathroom, and placed feces next to his bed during the night.

30. Dobynes was thus coerced into sharing his methadone with other inmates.

31. To avoid further physical harm, Dobynes was forced to spit his liquid methadone into a rubber glove, which he was then forced to turn over to other inmates.

32. Dobynes notified jail staff in writing that the other inmates repeatedly threatened to send him to the hospital with broken bones and to stomp his ears together unless he shared his

methadone with them, and yet the Defendants continued to advertise his methadone treatment to other inmates.

33. Deprived of his much-needed methadone, Dobynes suffered extreme withdrawal symptoms, such as withdrawal pains in his bones and muscles, dizziness, nausea, vomiting and sweating.

34. Dobynes's medical treatment plan also was significantly derailed as a result of the Defendants' misconduct.

35. In addition to this physical harm, Dobynes suffered severe emotional and psychological harm, including depression, as a result of the Defendants' misconduct.

36. Specifically, between August 8 and August 21, 2019, Defendants Flores, Hook, and Calderon routinely issued commands that disclosed Dobynes's illness and treatment. For example, they ordered, "Methadones get ready;" "Methadonians on your doors;" "If you have ever been a heroin user or a dope fiend, on your doors;" "If you have ever been on heroin or opiates, you should not be in my dayroom;" "Dope heads on the walk;" and "Methadones stop and get to the right or left." Further, Defendants Flores, Hook, and Calderon called Dobynes an "opiate avenger" and a "methadone head."

37. On or about August 21, 2019, Defendant Adeshina publicly and within earshot of other inmates referred to Dobynes as "Mr. Methadone" before searching him. Defendant Adeshina continued to call Dobynes "Mr. Methadone" in front of other inmates in separate incidents on August 24 and 25, 2019.

38. On or about August 23, 2019, Defendant Carter called Dobynes "a methadone" and publicly told Dobynes, in front of other inmates, that if he wanted to fill his methadone prescription, he had to go downstairs with all the other methadone users.

6

39. Dobynes filed several grievances throughout August, pleading for the Defendants to stop the disclosures and harassment.

40. In late August and early September 2019, Defendant Lt. Galan met with Dobynes, admitted that the Defendants' disclosures and harassment were wrong, and assured Dobynes that he would speak with the officers and that their misconduct would stop.

41. Lt. Galan also asked Dobynes to stop filing grievances.

42. Lt. Galan added that the misconduct would not stop immediately, but that it would eventually stop.

43. Lt. Galan wrote on an Emergency Grievance Action Review Form dated August 23, 2019, that Dobynes's "issues were addressed" and that Lt. Galan had "already spoken with the 3-11 command staff regarding HIPPA and being professional."

44. On the same form, Lt. Galan stated that Dobynes declined an offer to be relocated to another living unit at the Cook County Jail and was "not currently having issues."

45. That was false. Lt. Galan had not offered to relocate Dobynes, and Dobynes never indicated that he was "not currently having issues" relating to the Defendants' disclosure of his methadone prescription to other inmates.

46. Lt. Galan wrote on another Emergency Grievance Action Review Form dated September 6, 2019, that he and Dobynes had "agreed on a solution to his complaints . . . ."

47. In reality, however, there was no "solution." Lt. Galan's promises were not kept.

48. Instead, Lt. Galan continued to allow correctional officers under his command to advertise to other inmates that Dobynes was taking methadone.

49. Lt. Galan knew this because Dobynes continued to file contemporaneous written grievances describing the correctional officers' misconduct in detail.

50. Aside from an initial reprieve of approximately three days, however, Lt. Galan did not stop the Defendants' misconduct from continuing.

51. Lt. Galan and other correctional officers were well aware of the danger that their misconduct caused Dobynes.

52. In a grievance dated August 27, 2019, Dobynes explicitly wrote, "Staff misconduct has put my life in danger."

53. Yet the staff misconduct continued for months, after Lt. Galan and the other Defendants were well aware of the danger their misconduct posed to Dobynes, and even though Dobynes continued to alert them to the danger through dozens of prompt written grievances.

54. Lt. Galan knowingly permitted correctional officers to expose Dobynes's methadone prescription to other inmates and acquiesced in that misconduct, despite knowing that this conduct caused severe risks to Dobynes's health and safety.

55. For example, on or about September 1, 2019, Defendant Lopez called Dobynes a "dope fiend" and a "methadone" in front of other inmates when ordering him to come along to Cermak to receive his medication.

56. Predictably, other inmates confronted Dobynes, who had previously told his fellow inmates that he was no longer taking methadone. The other inmates slapped Dobynes and harassed him into sharing the methadone.

57. In a grievance filed the very next day, Dobynes pointed out that he "was told by Lt. Galon [*sic*] that it would not happen again."

58. That complaint was futile, apparently because Lt. Galan had no intention of keeping his promise to put a stop to the correctional officers' misconduct.

8

59. On or about September 4, 2019, Dobynes's cellmate called him a "dope fiend methadone junkie" and choked him. Dobynes notified the jail staff of this incident in a written grievance the next day.

60. Yet the Defendants continued to advertise Dobynes's methadone prescription to other inmates.

61. In another grievance filed on September 5, 2019, Dobynes notified jail staff that other inmates were harassing him. He explained: "The officers are still calling me by my medication (methadone) and that makes [Cook County Jail] a dangerous place for me."

62. Yet the Defendants continued to notify other inmates about Dobynes's methadone treatment.

63. On or about September 8, 2019, Defendant Harris humiliated Dobynes and publicly disclosed his medical condition and treatment within earshot of other inmates.

64. First, Defendant Harris told Dobynes and other detainees going for methadone treatment that Harris had problems with the last "methadone line" and that if "any of you perverted dope fiends say a word to a female prisoner, you will not get your fix tonight."

65. Defendant Harris also announced that he would check the computer and if the detainees did not have a prescription, they would not get their "liquid heroin."

66. Lastly, after another detainee requested a wheelchair, Defendant Harris shouted, "If any of you other methadone dope fiend, strip-sucking junkies have any more 'special needs,' you will not get your fix tonight."

67. "Strip-sucking" refers to taking another medication for heroin addiction.

68. On or about September 19, 2019, Defendant Collins also called Dobynes "Methadone" or "Mr. Methadone" within earshot of other inmates.

9

69. After Dobynes began writing grievances about the Defendants' misconduct, Defendant Sgt. Wolfe approached Dobynes and informed him that if he continued to write grievances, he would cause himself "a world of hurt."

70. When Dobynes asked what Defendant Sgt. Wolfe meant, Sgt. Wolfe threatened, "Keep writing grievances and you will find out."

71. Despite the threat by Defendant Sgt. Wolfe, Dobynes continued to file grievances.

72. On information and belief, both before and after making his threat and in retaliation for Dobynes's grievances, Defendant Sgt. Wolfe intentionally directed other Cook County Jail employees to search Dobynes more frequently and more invasively, to confiscate Dobynes's personal belongings, and to continue telling other inmates about Dobynes's methadone treatment.

73. On information and belief, in or about mid-October 2019, Dobynes was transferred from Division 6 of the Cook County Jail, where the Defendants named above worked, to Division 8.

74. In Division 8, as in Division 6, correctional officers continued to gratuitously disclose Dobynes' methadone prescription to other inmates notwithstanding a clear risk to Dobynes's health and safety, and on information and belief, they continued to retaliate against Dobynes for filing grievances.

75. On or about October 16, 2019, Defendants Joplin and Hughey repeatedly called Dobynes "Methadonian" within earshot of other inmates and announced, "Dobynes in cell 2, get ready for methadone."

76. On or about October 18, 2019, Defendants Gomez, Ramos, and Sanchez harassed Dobynes by shouting, "Hey you're a methadonian. How does it feel to drink that shit?"

77. When Dobynes denied taking methadone (in an effort to avoid further harassment by other inmates), Defendant Gomez replied, "Okay, Mr. Methadone."

78. Defendant Sanchez told Dobynes, "Oh, you're a smart ass," to which Defendant Ramos replied, "Correction — a smart ass *methadonian*."

79. On or about October 18, 2019, Defendant Torres-Irizarry shouted, again within earshot of other inmates, "Hey, tell that methadonian in cell 2 to get ready for methadone!"

80. Defendant Torres-Irizarry also yelled, "Dobynes, cell 2, get ready for methadone!"

81. That same day, Dobynes filed a written grievance in which he pleaded for help: "My life is being put in danger[.] I am already being [forced] to bring my meds back."

82. On or about October 21, 2019, in preparation for taking inmates to Cermak, Defendant Woods came to Dobynes's cell and asked which detainee was on methadone. Dobynes only replied generally that he needed to visit the medical facility. Defendant Woods pointedly asked again, "Are you on methadone?" This, of course, brought attention to Dobynes's methadone treatment within earshot of other inmates.

83. On or about October 22, 2019, Defendant Woods mentioned within earshot of other inmates that "Dobynes is on methadone." Upon hearing that, other inmates immediately harassed Dobynes into bringing his methadone back for them. Dobynes notified jail staff of this in writing the same day.

84. In a separate incident also on or about October 22, 2019, Defendant Woods yelled "Methadones get ready!" in front of other inmates and identified Dobynes as one of the detainees receiving methadone treatment by referring to him as a "Methadone" in "2E Division 8."

85. In addition to the Defendants named above, other correctional officers whose names are currently unknown to Dobynes exposed his methadone prescription to other inmates

11

and thereby deliberately placed his physical, emotional and psychological well-being in severe jeopardy.

86. By the end of his time at the Cook County Jail, Dobynes had filed more than 30 grievances seeking help, yet the harassment by the Defendants and the subsequent abuse by the other detainees never stopped.

87. Dobynes exhausted his administrative remedies by filing more than 30 grievances and completing the applicable appeals process.

## COUNT I

### VIOLATION OF THE FOURTEENTH AMENDMENT – DELIBERATE INDIFFERENCE TO DOBYNES'S SAFETY

88. Dobynes incorporates paragraphs 1 through 87 of his Second Amended Complaint and restates them herein.

89. As more fully described above, the Defendants were acting under color of law when they intentionally and routinely disclosed Dobynes's medical treatment and methadone prescription to other inmates while he was a detainee at the Cook County Jail.

90. The Defendants unreasonably exposed Dobynes to, and caused him to suffer, humiliation, danger, severe harassment, and physical harm through their objectively unreasonable misconduct.

91. The Defendants' decision to notify or the knowing acquiescence in the decision to notify other inmates of Dobynes's prescribed medication, methadone, and his daily treatment created an objectively serious safety risk to Dobynes.

92. The Defendants' conduct purposefully and knowingly, or at least recklessly, disregarded and failed to take reasonable measures to address a substantial risk of serious harm to Dobynes's health and safety.

93. The Defendants' conduct was objectively unreasonable and violated Dobynes's rights under the Fourteenth Amendment of the United States Constitution.

94. The Defendants violated Dobynes's rights under the Fourteenth Amendment of the United States Constitution under color of state law.

95. Dobynes therefore brings this claim pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiff Jeremiah Dobynes respectfully requests that this Court enter judgment in his favor on Count I of his Second Amended Complaint and against Defendants and:

A. Award compensatory damages in an amount to be determined at trial against each of the Defendants in their individual capacities;

B. Award punitive damages in an amount to be determined in favor of Plaintiff against each of the Defendants in their individual capacities, based on their deliberate and callous indifference to Dobynes's federally protected rights;

C. Order the Defendants to pay Plaintiff's costs and reasonable attorneys' fees incurred in prosecuting this action pursuant to 42 U.S.C. §1988 and under terms consistent with the Prison Litigation Reform Act of 1995; and

D. Order any other relief that the Court deems just and proper.

## COUNT II

**VIOLATION OF THE FIRST AMENDMENT, AS INCORPORATED TO THE STATES BY THE FOURTEENTH AMENDMENT – RETALIATION**

96. Dobynes incorporates paragraphs 1 through 87 of his Second Amended Complaint and restates them herein.

97. Dobynes's right to file grievances regarding Cook County Jail employee misconduct is protected by the First Amendment to the United States Constitution, as incorporated to the States by the Fourteenth Amendment.

98. Defendant Sgt. Wolfe threatened retaliation against Dobynes by telling him that if he continued to write grievances, Dobynes would cause himself "a world of hurt" and that Dobynes would "find out" what Sgt. Wolfe meant by this threat.

99. Because Dobynes filed grievances and continued to do so after Defendant Sgt. Wolfe's threat, on information and belief, Defendant Sgt. Wolfe intentionally directed other Cook County Jail employees to search Dobynes more frequently and more invasively, to confiscate Dobynes's personal belongings, to continue to expose Dobynes's methadone prescription to other inmates, and to retaliate against Dobynes in other ways.

100. Other Defendants similarly retaliated against Dobynes and other inmates for writing grievances. On August 22, 2019, for example, Defendants Hook and Calderon cuffed Dobynes's hands in an uncomfortable way behind his back and told him and other inmates who were brought to Cermak for methadone and similar prescriptions: "You are sitting with your cuffs to the back because you dope fiend bitches wrote grievances."

101. The Defendants also retaliated against Dobynes by continuing to expose his methadone prescription to other inmates, despite being on written notice that this conduct caused Dobynes to suffer physical, emotional and mental harm on account of bullying, harassment and coercion by other inmates.

102. Defendant Sgt. Wolfe's and other Defendants' retaliatory conduct would be likely to deter an average person in Dobynes's circumstances from filing grievances.

103. On information and belief, Lt. Galan had actual knowledge of the retaliation against Dobynes, as shown by the fact that Dobynes repeatedly and promptly wrote grievances complaining not only of the exposure of his methadone prescription to other inmates but also

complaining of the retaliation. Yet Lt. Galan knowingly permitted the retaliation to continue and acquiesced in it.

104. Defendant Sgt. Wolfe and the other Defendants, while acting under color of state law, violated Dobynes's rights under the First Amendment of the United States Constitution, as incorporated to the States by the Fourteenth Amendment.

105. Dobynes therefore brings this claim pursuant to 42 U.S.C. §1983.

WHEREFORE, Plaintiff Jeremiah Dobynes respectfully requests that this Court enter judgment in his favor on Count II of his Second Amended Complaint and against Defendants and:

A. Award compensatory damages in an amount to be determined at trial against each of the Defendants in their individual capacities;

B. Award punitive damages in an amount to be determined in favor of Plaintiff against each of the Defendants in their individual capacities, based on their deliberate and callous indifference to Dobynes's federally protected rights;

C. Order the Defendants to pay Plaintiff's costs and reasonable attorneys' fees incurred in prosecuting this action pursuant to 42 U.S.C. §1988 and under terms consistent with the Prison Litigation Reform Act of 1995; and

D. Order any other relief that the Court deems just and proper.

### JURY DEMAND

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.

Date: January 8, 2021                                                                 Respectfully submitted,

**JEREMIAH DOBYNES**

John M. Fitzgerald                                          By:      /s/ John M. Fitzgerald
Amie M. Bauer                                                        One of His Attorneys
TABET DIVITO & ROTHSTEIN LLC
209 South LaSalle Street, 7th floor
Chicago, Illinois 60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
*jfitzgerald@tdrlawfirm.com*
*abauer@tdrlawfirm.com*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of **PLAINTIFF'S SECOND AMENDED COMPLAINT** was electronically filed with the Clerk of the Court by using the Court's CM/ECF service. All counsel of record will be served via the court's CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification on this 8th day of January 2021.

                                                              /s/ John M. Fitzgerald